New Orleans City, New Orleans, U.S.A.  Take your time, we're just waiting for Judge Higginbotham, we'll return in just a minute, so it's fine, everybody get settled. Okay, Ms. Dovalina? Good morning, your honors, may it please the court, my name is Stephanie Dovalina, and I represent the appellant, Kristen Morales. We're here before this court on an appeal of a dismissal that was resulting from the district court granting all of the defendants, including the Office of Inspector General for the City of New Orleans, its Inspector General, Mr. Ed Michel, Bobby Jones, and the City of New Orleans, both of their motions for summary judgment for Morales' complaint. It dismissed all of her allegations under state and federal law based on issue preclusion, stating that because she appealed her suspension and termination before the Civil Service Commission as a permanent employee, that all of her causes of action were precluded. The court ruled in error for multiple reasons. First, the ruling dismissed several properly pled claims that did not arise from the same facts as her termination and suspension. The court also, Morales' federal claims of discrimination were never litigated. They were never even presented in the Civil Service Commission hearing. Also, and importantly, the findings of— The bulk of her claims pertain to she said she was wrongfully terminated because of race and gender. Well, that is an aspect of her claims, yes. That's the bulk, I think. I think we can go through the claims one by one, but just starting with the bulk, would I say, that she was terminated, I don't see how you can get around the Fourth Circuit's decision that the sole reason that she was terminated was the iPhone incident. Well, Your Honor, and the reason being that as far as the suspension and termination go, the Civil Service Commission has a different standard. And what that is based on is that the appointing authority has to show by a preponderance of the evidence that a violation has occurred, that— I'm less focused on the state-administered process because the cases you cite, Garner and Frazier, would mean preclusion doesn't apply. But once the Fourth Circuit steps in, the court, and says the sole reason was the iPhone and the dishonesty, that means there couldn't be pretext for some other reason. Am I right? Well, Your Honor, we disagree with that. And we disagree with that based on the Bostick case. Because essentially— Your brief says Bostick, but Bostick didn't change a causation standard. Bostick just said a larger group can be contemplated. Right. Bostick says that it is, that specifically states that an employer cannot escape liability if there is more than one reason that is a motivating factor. And so what happened in the Civil Service case is— And therefore, you're asking us to not follow when? Because Bostick has impliedly reversed that? Well, what we're saying with Bostick is that Bostick says that it doesn't have to be this ultimate decision. It doesn't have to be just something that I think the Fifth Circuit has recently also moved off of in Higgins and Hamilton, which is another one, that it doesn't have to be the ultimate decision, the only decision for a termination. So in this case, the Civil Service did not look at any allegations that were outside of what was—there were seven different counts put in this termination letter. And after she had already been terminated and were in the Civil Service hearing, that's when Mr. Ed Michelle says, well, it's just based on this iPhone that has zero value that she gave away to someone five years ago under two prior IGs. Part of some of the claims that they've made as well in that was that listing an EEOC charge of discrimination that she filed as a reason for her termination. So that is an aspect that never went into argument, that was never presented. All that the court looked at, the Civil Service referee, was whether or not those elements were met underneath the appointing authority's requirement to show that there was a violation of the law and that then the dereliction was commensurate with the discipline. So in this case, because we have never even had any type of argument on discrimination, and because Title VII allows that you can have more than just this one ultimate factor of termination that it is a but for, and that there can be motivating factors that are discriminatory in allowing a plaintiff. But it is still difficult to get around the Fourth Circuit's determination that the sole reason, precluding any other reason. But Your Honor, what is important to remember is that they said the sole reason asserted by the appointing authority. And once they got into the hearing and the appointing authority, because the referee found that the appointing authority abused its discretion in listing other issues such as that she didn't have permission for domicile, that she lacked candor when she couldn't remember Patty Scurlock's name, that she went on the Heisman Trophy. They also stated that because the appointing authority presented no evidence whatsoever on the charge that they said Ms. Morales was retaliatory by filing a grievance under the CAO policy for grievance and filing a charge of discrimination, that that was another reason for her suspension and termination. So when the Court of Appeal looked at the ruling that was from the commission, the commission disregarded everything, even though they found that the appointing authority had acted arbitrary and capricious in certain areas, because the appointing authority decided after, even though they never rescinded the letter, they said, well, the main reason that we did it is because of this iPhone, and that's why. So the Court only looked at those issues. There was never any type of litigation. There was never any mentioned, no type of argument that addressed the larger Title VII claims and her conspiracy claims, in addition to the fact that the City of New Orleans was never even a party to this case. The structure of the Civil Service Commission is that it's based on the appointing authority. Who is the direct supervisor, the agency that the employee works for? And so that is who it is, but it's under the umbrella of the City of New Orleans. One of the things that we've alleged is that it is a joint employer between the City of New Orleans and OIG. City of New Orleans is never party to the, and they have separate counsel that was representing not the City of New Orleans counsel, but so they were not present to any of the Civil Service claims. And so we do have claims outside of that as well for the conspiracy related to her grievance that she filed and what occurred there. You're talking quickly, which is good. You know, I used to too, but I'm just trying to keep track. So when you keep saying you have grievances that are outside, you're saying grievances unrelated to the suspension and termination? Is that what you're saying to me? Correct. So with the operative complaint, not pointing to the factual allegations, really the claims, which claim was unrelated to termination? Claim, not facts. Okay, so Morales charged in her federal complaint that she reported illegal and unethical behavior by the FBI agents and to her supervisors that resulted in retaliation from an employer. This was related to. And this is in which claim? And this is for one of the whistleblower claims. That is a state whistleblower claim. And that actually was not listed in her suspension or termination, and it relates to things that go back to 2000, 2020. She also has in her claim a federal complaint that has allegations against her coworkers for. That partly would help me if you refer to the specific claim, if you know it. If you don't, you can get when you get back up. Oh, yes, Your Honor. So the whistleblower, starting with conspiracy, count two, conspiracy to violate human rights under L.A.R.S. 51-2256. That is a state claim against the OIG based on the fact that multiple employees conspired in order to cause discipline and take away her rights. Also, so that encompasses things that were completely outside prior to and after the termination. Count three, violations of Louisiana whistleblower law. That relates to the allegations that she made to her supervisors about illegal activities, unethical activities by the FBI that resulted in her being pulled off of as the lead investigator of the Hard Rock investigation collapse case. That is under her whistle. Would I be correct that before Judge Fallon, when you were arguing against preclusion, you were saying, okay, if you follow in, which is the case he did follow, which itself cites the published authority, Levitt, then anything relating to the removal we acknowledge as precluded. But littered throughout here are allegations that she was discriminated on race and gender that are unrelated. Was that argument made? Or did you? We did make that argument. And we supplemented our arguments in a motion to amend. And we made the same arguments as well in the opposition that later came to the city of New Orleans. What would you say opposing counsel's response to that is? Opposing counsel didn't really address it. What they did was they cited several times to a portion of the ruling where the hearing officer stated that the appointing authority never gave any information to support its claim. Morales had a pattern and practice of retaliating by filing a grievance. And they also cited to a January 7th letter in her pre-termination hearing, which is not part of the civil service appeal. That is only between the IG, their attorney, and then I was present as well as Ms. Morales. That's something that didn't become part of the record in its entirety because the OIG objected to parts of it being included. In that, she gave notice that she felt she was being retaliated and discriminated against. Those are the only things within the civil service case that ever had any mention. But where they cite to in the hearing officer's report is merely a recitation of what witnesses have stated what. And when he goes into his analysis, he says that the appointing authority never met that burden. And so that is what, in addition to the fact that there is a whistle, under the whistleblower claim, there's also a public records request. Right before she was, before she was suspended and terminated, there was a letter of reprimand that was sent to her over not putting hours in. During that civil service case that we defended against, that we filed, in that, there were several requests that we made for personnel files that were refused to be provided for. So we had to file a public records request. That is also within, was never responded to. And that is another whistleblower. And I do try to read the record, but I don't always get, I'm not really fully apprised of all the details in front of the Civil Service Commission. Maybe if I just, let me ask you, what's the relief you're asking us to enter? Looking at Judge Fallon's order, are you agreeing that he properly relied on case law published that underlies when, so the majority of your claims actually are precluded, or are you saying nothing is precluded? We are saying nothing is precluded. And it's, it's twofold. Not only is it that, under Bostick, that, that there is a but for, that we, it does not have to be that ultimate factor, that it can't be the only decision, that this, that the Fourth Circuit stated that the only reason asserted by, that they decided to, to stick to was, and provided evidence for, was the iPhone issue. And also, because of that, issue preclusion just does not attach here, because nothing was ever litigated in the lower court case. Therefore, it cannot reach the elements that are necessary, because you don't have the same parties, and you don't have the same factual issues, along with the fact that the have her federal claims, that is abrogating a Seventh Amendment right to a jury trial. You put it all into one statement there, all right. Okay. And I see that my, yes, I do have a few more minutes. And so, based on that, because their Title VII does allow you to have a jury trial, and that is something that in some of the case law, they decided that was prior to it. So it was in 1991, that Title VII was amended to say that you have a right to a jury trial. And that jury trial cannot be abrogated, if there is, are legal remedies, and there are also equitable remedies. So the Civil Service Commission can only provide equitable remedies. They can give her reinstatement, and they could give her back pay. However— You appealed the Civil Service Commission into the state court, correct? I'm sorry? You appealed a CSE decision to the state court. That is correct. Well, the difficulty I find with that is that, is that, is the, we're dealing with a judicially reviewed state agency decision, and that makes all the difference, in terms of issue preclusion. But if the— Administrative determinations would not, but once you go to the state court system, you pick up issue preclusion. Why do you answer that? Because the issue was never litigated. So it cannot meet the second element of issue preclusion, because the issue of discrimination was never litigated. The only issue that was litigated was whether or not the appointing authority had enough evidence to say that terminating her based on the iPhone issue was enough to meet their burden of proof, to uphold the decision. Because the commission does not go back and look at and change the appointing authority's decision. They say whether it met that burden or not, which is a less burden and a different causation and burden when you're looking at Title VII and 1981 claims. All right. Thank you, Ms. Dovalina. You saved time for rebuttal. Yes. Thank you. Ms. McIntyre? Good morning. May it please the Court. My name is Amy McIntyre, and I represent the Office of Inspector General, Inspector General Ed Michelle and Bobby Jones. We submit the district court did not err in dismissing Ms. Morales' claims as precluded. At the outset of my argument, since it seems appellant's main argument is that her claims of discrimination were not able to be addressed at the state court level, I'd like to note two important corrections of the record. The first is, in her appellant's brief, she cites a single statement from the civil service hearing officer on page 36, where she says he stated, as I've said in my emails, this letter and then did not allow her to argue discrimination or retaliation. She cites ROA 1397 for this quote, but that's incorrect. This quote is nowhere to be found in ROA 1397 or, indeed, anywhere in our record. Civil service never prevented her from making such arguments, and it was, frankly, the entire purpose of the three-day hearing. The second record correction I'd like to note is found on page 16 of Ms. Morales' appellant's brief. She states at the lower court proceedings the OIG admitted that Ms. Morales' federal discrimination or retaliation claims were not part of the civil service hearing, and for that, she cites to ROA 1567. 1567 is a motion in limine that was filed by the OIG to limit testimony in a completely different civil service hearing. Months prior to Ms. Morales' suspension and termination by the OIG, the OIG issued her with a letter of reprimand that Ms. Novelino referenced. This was a reprimand for Ms. Morales failing to properly enter her work time into the OIG's computer system. It's a software called Wingswept. She appealed that letter of reprimand to the civil service, and civil service issued a separate decision finding her at fault for this one discrete issue and upholding the letter of reprimand. That's in civil service case number 9212, and that is a different proceeding than ours here. That case number 9212 is at the top of the motion in limine that she's citing in the record. But let's say you're right about those two misrepresentations. What does that fundamentally mean? Just correcting those two. Yes. No, it's important to correct, but that means that what was litigated in state court? That means that in state court, her claims of discrimination or retaliation were in fact litigated, and the record that we have before us is rife with examples, Your Honor. I'll hit a few highlights. First, the civil service appeal form that appellant filed literally cited and attached civil service rule 4.5, which states employees in the classified service who allege that they have been discriminated against because of their sex, race, or other protected class have the right to appeal to the commission. Ms. Morales' own appeal form initiating her appeal to civil service invoked that rule. It explicitly mentions discrimination, and she was allowed to make all of those discrimination arguments before civil service, which was then affirmed by the Fourth Circuit. So then she had a trial, several day trial, with counsel, and all aspects of discrimination were presented there? Correct. Then in my mind, understanding the doctrine, preclusion, the key is then what did the court do? The state court find? The court reviewed the entire record and upheld the civil service commission's decision in that the sole reason that the OIG suspended and terminated her was because of the iPhone. It wasn't a reason, it was the sole reason. That's what I thought, and I'll accept that. I mean, opposing counsels disagreed, so we'll look at it, I'll look at it again. But sole reason she was removed. But when I look at her operative complaint, count five in particular, she is alleging pre-removal discrimination, particularly as to pay. She's saying, well, men were paid more than I was. And what would be your position as to that? Would you agree that wouldn't have been precluded by anything the Fourth Circuit said? As to count five, she made those same arguments about pay discrimination and years of disparate treatment at the OIG before. Yeah. Pre-removal. Pre-removal, correct, in the state court proceedings, but they were inexorably intertwined with her eventual claims of the adverse action being suspension and termination. It was all of these actions culminated in wrongful discipline, that wrongful discipline being suspension and termination. And I would say— And do you need a case that says that a removal determination precludes a plaintiff from bringing pre-removal discrimination because the facts are intertwined? Do you see my point? Yes. That's—so that's my difficulty. No, and again, I'd like to point to a portion of her operative complaint. Yeah. In paragraph 35, I mean, she specifically says, you know, Ms. Morales was wrongfully suspended and then for 30 days without pay prior to her termination, she was subjected to a hostile work environment and to—intentionally harassed and targeted in a conservative effort to wrongfully discipline a terminator. And then if we go through the specific allegations in the complaint, the pre-termination conduct was alleged at civil service, and it was all wrapped up part and parcel with the ultimate adverse action here being the suspension and discrimination. What if the court then only rules that the sole reason for the removal is the following, wipes out the Title VII claim as to the bulk of it, as Aya said, but I'm not sure how that finding then resolves. It was the motion to reconsider that said, well, wait a minute, I was alleging discrimination that was unrelated to my removal. I don't read the operative complaint that way, Your Honor, and I don't think civil service interpreted that she was making a discrimination claim separate and apart from her suspension and termination. Civil service has a separate form for discrimination claims in that context, which she could have filed. And, you know, ultimately the civil service proceedings were three days. She alleged all the discrimination and retaliation. She did there. Mm-hmm. And do you have a strong enough recollection of the State Court proceeding? Did all of it get realleged in front of the Fourth Circuit? In Appellant's Fourth Circuit brief, she alleged the entire narrative of history. Including the pay disparities? From the best of my memory, yes. I can say with certainty that in Appellant's Fourth Circuit brief, she alleged conduct predating, you know, those specific iPhone events that led to the termination. So she, you know, the facts of the years of, you know, alleged conduct at the OIG by her fellow employees was certainly a part of the State Court record, both before civil service as well as before the Fourth Circuit Court of Appeals. Who did it . . . The primary argument, as you heard just today, is there shouldn't be preclusion at all as to anything. And that seems to turn on her application of Bostock as an intervening case. Do you want to turn to that or . . . I agree with your statement earlier, Judge, that Bostock did not change the causation standard in Title VII cases. I can address Bostock on several different bases. First, all Bostock did was expand the protected classes under Title VII. Sex now includes sexual orientation as well as transgender status. The cases we've cited in our brief make clear from the Fifth Circuit that it didn't change the causation standard. You know, under controlling case law in this circuit, pre and post-Bostock, motivating factor, which I believe is the standard that my friend is, you know, hanging her hat on. Motivating factor has been the Title VII discrimination standard in this circuit, pre and post-Bostock. There's no change under Bostock. Pre- and post-Bostock, the causation standard for Title VII retaliation claims, that's but for causation. And that's Supreme Court precedent from the University of Texas versus Nassar decision from 2013. So there has been no change to any sort of Title VII causation standard under Bostock. And I would note that the Wynn case, which Judge Fallon relied on, wasn't even a Title VII case. So I don't see how, you know, a Bostock Title VII case, even if it did change the standard, which it didn't, could somehow overrule, you know, a non-Title VII case in Wynn. I'd like to turn to the specific claims that were identified by Ms. Dovalina. She cited count two, the state law claim against the OIG for conspiracy to deprive her of a whistleblowing claim. I think Ms. Dovalina was arguing that those are somehow unrelated to her suspension and termination. But if we look at the operative complaint, they clearly do arise from the suspension. I would agree. But again, for count five, I would argue that in the state court proceedings, both civil service and the appeals court, there was plenty in the record talking about the specific facts of those instances pre, you know, the date of the termination. I'd also like to address the jury trial argument that my opponent has raised. I think the most instructive case on that point would be the Supreme Court's decision in Kramer v. Chemical Construction Corporation, and that was cited in our appellant's brief. And, you know, that case is obviously binding precedent on this court. In that case, Justice White authored a majority opinion which made clear that a federal court and a Title VII case must give preclusive effect to a judicially reviewed agency finding that an employee's termination was proper. That's exactly the situation we have here. In that case, Kramer, an employee was fired and not rehired. He alleged it was because of discrimination. The appropriate state agency held a hearing and determined that the employee had been fired and not rehired for other reasons, namely he had less professional experience than his peers. A New York state court affirmed that, and it went up to the Supreme Court. The Supreme Court said that preclusion principles bar those Title VII claims. Now, that employee obviously never got a Title VII jury trial before the administrative agency. That didn't bar preclusion, and the same result is warranted here, so. I'd also like to note that since briefing has closed, the Fifth Circuit has issued a decision in a case called Gray v. G.C. Services on October 20, 2023, that applied principles of res judicata to employment claims really similar to Ms. Morales's. As I understand the argument, one of Ms. Dovalina's arguments is that the exact same cause of action, the Title VII cause of action, could not have been litigated at civil service, so therefore claim preclusion, including res judicata, can never apply. For all the reasons we've already discussed, I don't agree with that, and the more recent Fifth Circuit decision in Gray held the same and said, while some details and legal theories may diverge across proceedings, the basic facts forming the causes of action remain the same. Thus, res judicata applied. The later case was dismissed. In conclusion, I'd just note the state court record, both before the civil service and the Fourth Circuit Court of Appeals, made clear that both tribunals heard, considered, and rejected her claims of discrimination and retaliation and other improper conduct by the OIG employees that are now being realleged in federal court. The civil service decision in full repeatedly references her EEOC charges, whistleblowing complaints. It uses the word retaliation. That was obviously decided at the state court proceedings. Ms. Morales has litigated these same issues for years in state court, and then again in the federal district court, and now here. She's lost in front of 11 different judges and all civil service members unanimously. We would submit that Judge Fallon got it correct in his decision, and we would ask the court to confirm, to affirm, and I would welcome any other questions if the court has any. All right. Thank you, Ms. McIntyre. Ms. Robbins? Good afternoon, Your Honors. Elizabeth Robbins on behalf of the City of New Orleans. I'm here today asking this honorable court to affirm the district court ruling that granted summary judgment to the city, to the OIG, and to named OIG personnel, and dismissing all of plaintiff's claims with prejudice. As my time is limited, I would like to focus on two fatal flaws of plaintiff's appeal to this court, the first being that plaintiff grossly understates the exclusive power and authority of the Civil Service Commission granted by the state's Constitution to hear all removal and discipline cases appealed by classified employees such as Morales. In fact, in the Fifth Circuit case of Wynn versus the City of New Orleans, which the district court quoted extensively, civil service employees must successively challenge a termination before the Civil Service Commission before pursuing damages in a district court. Here the commission found no wrongful termination, instead finding Morales' action of giving away OIG property to an individual not associated with the OIG, and more importantly, lacking candor in her statements to the investigators. First saying she didn't remember this, then saying, I think I gave away my own phone, when confronted with the fact that they had the serial number for the phone and it was, in fact, their property, she claimed that previous OIG administrative heads had given her authorization, which was contradicted by their sworn testimony and sworn statements that were brought into the Civil Service hearing. So the finding of the commission that there was no wrongful termination and that this reason was sufficient cause for termination, um, contra—oh, I'm sorry. That gets affirmed by the Fourth Circuit. That gets us before the Fourth Circuit. So what they said is that warranted— What did the commission decide about the pre-removal discrimination allegation? Excuse me? What did the commission decide about her pre-removal pay disparity allegations? I'm not familiar with those particular allegations specifically, but I do want to mention, because I think it was in, um, in an appellant's brief to this Court, talking about the Title VII claims, suggesting that the Civil Service Commission didn't hear those which OIG's counsel has indicated they did, and the commission has four exclusive grounds of discrimination that they can hear, um, which is race, gender, political, and religious beliefs. It doesn't include, uh, age discrimination or disability, but those aren't the claims that the plaintiff made in this case. Hers were race and gender, and those are, if they were presented there, those are things that the commission can hear and can decide on. But you're correct. Once there was a finding of wrongful termination by the commission, that was then presented to the Fourth Circuit, but backing up a little bit, the commission finding that OIG had caused terminate Morales and that the reason presented by the OIG of her giving away property and her lack of candor with investigators demonstrates litigation of the issues of termination and, of course. Then, when that's affirmed by the Fourth Circuit, which says this is the reason for the termination, that's where we get issue preclusion. Now, the writ by plaintiff to the Supreme Court was simply denied. A plaintiff is corrected. That doesn't have precedential value. However— You said there was going to be a second fatal problem. Yes. Oh, I'm sorry. So, the second fatal flaw is, namely, that she's still entitled to have her case because she wants to present this to a jury, and Civil Service Commission doesn't have a jury, doesn't have discovery, and doesn't award damages of any kind, monetary and otherwise. But as noted by the district court, the parties didn't dispute that all of plaintiff's claims asserted in state and federal court arise from the suspension and termination. Therefore, any litigation going forward has as an essential element the requirement to prove wrongful termination and what the cause is. And because this went all the way through the state system, that's already been determined. That's where the issue of preclusion comes in because they have been litigated. Okay. So, we ask that because of that, this honorable court affirm the district court finding—granting the summary judgment to all defendants and dismissing all claims with prejudice. Thank you. All right. Thank you, Ms. Robbins. Ms. Dovalina, rebuttal. Thank you, Your Honors. In rebuttal to the arguments that we just heard, as I'd like to point out to the discrepancies within the brief, I did try and check all of the citations again last night, and I thought that I had them, but I can tell you that there is definitely something in the record. If there is a typographical error that I transposed the numbers, everything that I cited to was present in the record. And the testimony, it was a direct quote from the hearing officer stating that he was only looking at the allegations that were within the letter of termination and suspension and not at any claims of discrimination, which he was well aware of, were all pending at the EEOC. Also, when the motion in limine was filed, the motion in limine was actually about the termination case. There were two different counsels. First, it was still with Counsel Ms. Sharonda Williams that was representing the OIG, and then midway through the case, it got extended, and that's when Counsel for Chap McCall came on. So that was a motion that happened prior to that where they acknowledged and did not want anything related to the EEOC discrimination case to be let into this matter. So it was specifically excluded. Moreover, Counsel for the OIG has not once cited to anything in the record, repeatedly states that these issues were decided by the Fourth Circuit and by the Civil Service Commission, moralesis claims of discrimination and retaliation. But there's nowhere in the record that says it is not present anywhere within the 40-page hearing officer's report or the commission decision that adopts it in full, because what happened was none of it was allowed in. All that was litigated was there were the issues that the case, you know, that the OIG had put forth, seven different ones, saying that Morales gave away an iPhone, saying that she filed discriminatory EEOC charges and should be terminated for that. She asked for an extension to live outside of the city, and they never checked to see if it was. And in all of those, there were several that the commission found that they were arbitrary and capricious. The Civil—the Fourth Circuit never addressed anything, and that is one of the big distinctions in Cramer, because in Cramer, the claim that the plaintiff had made was before a commission similar to the EEOC that's in New York. And so they specifically litigated and looked at the discrimination claims, which none of them happened here in this case, because the burden is on the appointing authority in the Civil Service case, and the burden is over here on us in this one. It just isn't true. There is nothing that is in the record that they can cite to to show what a decision was made as for discrimination. Additionally, I'd also just like to point out for the new citation that counsel had mentioned that I have not received a Rule 28J letter advising of the new citation since the court has ruled. One of the things that I'd like to point out, and I'm looking at—this is our tab for the record excerpts with the hearing officer's report and the commission's ruling, tab 6. This is at page 10. This is in the analysis and facts ruling that the hearing officer gave in regard to the iPhone issue. He said that the—that the appellant violated CIO—CIO policy memorandum 60R by deciding to give an iPhone to a private citizen, notwithstanding the fact that the phone had no value and was no use to the OIG. While it seems heavy-handed to go to such lengths to investigate such a minor infraction, and it's apparent that the new leadership wanted the appellant removed because of interpersonal relationships that existed within the office. So the hearing officer has even acknowledged that there are other issues that have come into this suspension and termination. Morales should not be completely deprived of setting forth her state claims, her claims of discrimination that fall outside of this, that occurred after it, everything against Bobbie Jones. Nothing of that was included within her hearing. That's about a Facebook hack and some other information that she—that she fabricated. She became counsel in front of the hearing officer as well as in front of the commission? Yes. The OIG represented Ms. Bobbie Jones. And the lawyer was the same—the same one in front of the 4th Circuit? Partially. Ms. Sharonda Williams represented the OIG, Bobbie Jones, and Ed Michelle from—during the pre-termination hearing, which—well, just the pre-termination meeting that was on January 7th, then that's when she got terminated. We appealed the—the discipline, and Sharonda was on, and I think she recused herself in March or April when she became counsel with Loyola and then—or Tulane, one of the two. And then after that, there was a brief break because the OIG needed to get new counsel, and that's when they brought on under a contract counsel for Chap McCall, Ms.— I meant—I meant counsel for Morales. For Morales. It's always been me. Always been you. Always been me. So you could have put anything you wanted in front of the 4th Circuit? Well, no, because the 4th Circuit, it was not before. The 4th Circuit is merely based on what the record was and what arguments were made within the Civil Service Commission, and there was nothing that was made about the allegations of discrimination because that was a separate Title VII claim, and the commission was merely looking at whether or not there was some type of legal—or some type of justification for the appointing authority to say that Morales had violated a rule and that she could be disciplined for that. Thank you. Thank you. Ms. Dolina, your case and all of today's cases are under submission, and the Court is in recess until 9 o'clock tomorrow.